IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Christopher Demont Owens, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Warden A. J. Padula, Robert E. )<br>Ward, Associate Warden )<br>Margaret J. Bell, Captain C. )<br>Johnson, Captain Angela )<br>Pinkney Neasman, DHO J. C. )<br>Brown, Warden White, J. )<br>Montgomery, Valerie Whitaker, )<br>Officer Quillion, Captain Percy )<br>Jones, and Associate Warden )<br>NFN Claytor, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 8:06-3014-GRA-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion to dismiss two defendants and for summary judgment for the remaining defendants and the plaintiff's motion for a protective order and/or to appoint counsel.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all

pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on October 24, 2006, seeking damages for alleged civil rights violations. On February 26, 2007, the defendants filed a motion to dismiss and for summary judgment. On February 27, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On March 26, 2007, the plaintiff filed a response opposing the defendants' motion.

## **FACTS PRESENTED**

The plaintiff is a state inmate within the South Carolina Department of Corrections ("SCDC") currently housed at the Perry Correctional Institution ("PCI"). At the time of the events alleged in the complaint, the plaintiff was housed at the Lee Correctional Institution ("LCI") and the Broad River Correctional Institution ("BRCI"). On April 8, 2005, there was an incident in the cafeteria at the LCI which involved an officer being attacked by an inmate. In his complaint, the plaintiff alleges that although he was not involved in the incident, he was sprayed with pepper spray without provocation as he was returning to his dorm. (Compl. at 3.) He further alleges he was then placed in lock-up in the Special Management Unit ("SMU") and not allowed to wash the pepper spray off. (*Id.*) The plaintiff was immediately transferred to the BRCI where he alleges defendant Captain Jones grabbed him and "rammed [his] head into the holding cell window." (Compl. at 4.)

The plaintiff alleges he was placed in a cell without running water over the weekend and was not allowed to wash off the pepper spray or shower until Monday. (*Id.*)

The plaintiff alleges he was not served with disciplinary papers regarding the April 8th incident at the LCI until April 15, 2005, when he was charged with an assault and/or battery with intent to kill of an employee. A disciplinary hearing on this charge was held on April 19, 2005. The plaintiff states he was present and had counsel substitute. (Compl. at 6.) He alleges he was denied due process during the hearing because, among other things, he contends he was not allowed to question his accuser. (*Id*. at 7.) He was found guilty of the charge and sanctioned with the loss of numerous privileges for 180 days, a verbal reprimand, restitution, the loss of visitation privileges for 18 months, and 360 days of disciplinary detention. (*Id*.) The plaintiff appealed unsuccessfully.

On April 25, 2005, the plaintiff alleges he was assaulted by another inmate in the BRCI in retaliation for his assault of the officer at the LCI. The plaintiff alleges defendant Quillion opened the other inmate's window so that the inmate could assault the plaintiff. (*Id.*) He alleges officers gave the inmate extra food and cigarettes for assaulting him. (*Id.*) The plaintiff also alleges beginning May 9, 2005, his legal mail has been opened and read by the defendants. He contends he filed a grievance but the problem was ignored. (*Id.*)

The plaintiff contends the defendants have violated his rights under 5th, 8th, and 14th Amendments. (Compl. at 2.) He is seeking $50,000 in actual damages and $50,000 in punitive damages from each defendant and a declaratory judgment. (Compl. at 5.)

## **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific,

material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

### MOTION TO DISMISS

The defendants have filed a motion to dismiss two defendants, Warden White and Officer Quillion, due to lack of service. It appears that defendant White no longer works for the SCDC and could not identify an employee by the name of Quillion. (Docket # 8, 12.) In any event, it is undisputed that these two defendants were never served. Therefore, the defendants contend these two defendants should be dismissed. (Defs.' Mem. Supp. Summ. J. at 5.)

Under Rule 4(m), if a defendant is not served within 120 days of the filing of the complaint, the district court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time." Fed.R.Civ.P. 4(m). However, since the plaintiff has been granted In forma pauperis ("IFP") status in this case,[1] service requirements fall under the holding of *Greene v. Holloway*, 210 F.3d 361 (4th Cir.

---

[1](Docket Entry # 6.)

2000).(unpublished).[2] In *Greene*, the Fourth Circuit Court of Appeals cited with approval *Graham v. Satkoski*, 51 F.3d 710 (7th Cir.1995), which held that

> [a] prisoner need only furnish the Marshal's Service with information necessary to identify the defendants. . . .[O]nce the former [defendant] is identified, the Marshal's Service should be able to ascertain the [defendant's] current address and, on the basis of that information, complete service. The prisoner may rely on the Marshal's Service to serve process, and the Marshal's Service's failure to complete service is automatically "good cause" to extend time for service under Rule 4(m). . . . [This holding] is grounded in the belief that use of marshals to effect service alleviates two concerns that pervade prisoner litigation, state or federal: 1) security risks inherent in providing the addresses of prison employees to prisoners; and 2) the reality that prisoners often get the "runaround" when they attempt to obtain information through governmental channels and needless attendant delays in litigating a case result.

*Id.* at 713 (internal citations omitted). Whether or not to dismiss a case for insufficiency of service is within the discretion of the court. *Dimensional Communications, Inc. v. OZ Optics, Ltd.*, 218 F.Supp.2d 653, 655 (D.N.J. 2002).

The Court notes that the plaintiff has addressed the failure of service regarding these two defendants in several filings with the Court (see Docket # 16, 22) and clearly has attempted to effectuate service as best he can from prison. Furthermore, although never served, it appears that these two defendants have individually participated in discovery through their attorney (*see, e.g.*, Docket # 28, 36) and collectively in other aspects along

---

[2]As the Second Circuit has recognized, a pro se plaintiff who has been granted IFP status is "dependent upon United States Marshals to effectuate service of process." *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 309 (2d Cir. 1986). "By granting [a plaintiff] leave to pursue his § 1983 claim in forma pauperis, [a district court] shift[s] the responsibility for serving the complaint from [the plaintiff] to the court." *Wright v. Lewis*, 76 F.3d 57, 59 (2d Cir. 1996). Such a plaintiff is thus "relieved by his poverty of the responsibility for filing and effecting service of his complaint," and has "thus relinquished control over service . . . ." *Id.*

6

with the named defendants. Because it appears that the two defendants not served with process have participated in this litigation through counsel, and further the analysis of some of the claims against them is the same as the analysis applied with respect to the other defendants, the Court believes it is not appropriate to dismiss for failure to serve. Instead the Court has reviewed below whether all defendants are entitled to summary judgment on the merits. *Alexander v. Forr*, Slip Copy, 2006 WL 2796412 (M.D.Pa. 2006). Accordingly, the defendants White and Quillion should not be dismissed for insufficient service.[3]

**SUMMARY JUDGMENT MOTION**

**1) Exhaustion**

The defendants concede that the plaintiff filed grievances on some of the claims he raises in his complaint. Specifically, the defendants concede the plaintiff filed grievances on the handling of his legal mail, his disciplinary proceeding, his excessive force claim by officers, his assault by another inmate, his placement in SMU, his assault by another inmate, and the defendants' use of the black box.[4]   (Defs.' Mem. Supp Summ. J. at 6.)

---

[3] Further, the Court's recommendation to grant the defendants' summary judgment motion renders this motion moot.

[4] "A 'black box' is a hard plastic box placed over the lock apparatus that runs between the prisoner's handcuffs which make it more difficult for a prisoner to tamper with his handcuffs. A chain runs through the box and encircles the prisoner's waist. The chain is tightened and then locked in back so that the prisoner's hands, restrained by handcuffs and the black box, are pulled against his stomach." *Weber v. Gathers*, 2006 WL 2796383 (D.S.C. 2006)(unpublished).

However, the defendants contend the plaintiff has failed to exhaust his administrative remedies on the plaintiff's assault and excessive force claims by defendant Jones and thus these unexhausted claims should be dismissed.[5]

In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that the Prison Litigation Reform Act's ("PLRA's") exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. The PLRA provides in pertinent part that: "No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e(a). In *Porter*, the United States Supreme Court held that "exhaustion in cases covered by 1997e(a) is now mandatory." 534 U.S. at 524. The Court noted that a district court has no discretion, as had existed prior to the PLRA, to determine whether administrative remedies needed to be exhausted in a particular case. *Id.* A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of a § 1983 suit. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). Exhaustion can only be satisfied if the grievance "served its function of alerting the state and inviting corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

---

[5]Alternatively, the undersigned recommends that court should decline to exercise supplemental jurisdiction over the plaintiff's state law assault claim. (*See* infra p.18.)

8

In his assault and excessive force claims, the plaintiff contends that defendant Jones beat and gassed him during his transfer to the BRCI. However, the plaintiff did not file any grievance regarding these incidents. Thus, the plaintiff has not shown that he exhausted his administrative remedies concerning his assault and excessive force claims and accordingly these claims should be dismissed for failure to exhaust.

**2) Due Process Claims**

The plaintiff contends the defendants violated his due process rights when handling his disciplinary proceeding. He alleges the defendants falsely charged him, failed to give him proper notice, presented false testimony at the hearing, and failed to answer his questions at the hearing. (Compl. 4-7.) The defendants contend the plaintiff's due process rights were not implicated because he was sanctioned with only administrative segregation. (Defs.' Mem. Supp. Summ. J. At 13.)

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the United States Supreme Court applied a due process analysis to prison disciplinary proceedings. The Court held where a prison disciplinary hearing results in the loss of good time credits the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Id.* at 563-567.

While the plaintiff is entitled to these procedural safeguards for protected interests, such as the loss of good time credits, he is not entitled to a due process hearing every time action is taken to control his behavior. Here, the plaintiff has not alleged and the record does not reflect that there was any loss of good time credits. (See Compl. at 7.) The plaintiff merely raises his claims based upon his loss of privileges and placement in SMU, or administrative segregation. The plaintiff was not entitled to due process protections with respect to his disciplinary hearing because the disciplinary actions taken and the plaintiff's loss of privileges and placement in SMU did not create atypical or significant hardships in relation to the ordinary incidents of prison life. *McNeill v. Currie*, 84 Fed. Appx. 276 (4th Cir. 2003)(citing *Beverati v. Smith*, 120 F.3d 500, 503-04 (4th Cir. 1997)).

The plaintiff also alleges the defendants did not conduct the disciplinary hearings in accordance with SCDC policy. Initially, the Court notes that generally "a state's failure to abide by its own law as to procedural protections is not a federal due process issue." *Brown v. Angelone*, 938 F.Supp. 340, 344 (W.D.Va. 1996)(*citing Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990)). Additionally, a plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words, absent "atypical and significant hardship," a change in the conditions of confinement simply does not inflict a

cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. *Id.* In reviewing such allegations, the court focuses on the nature of the deprivation itself. In *Sandin*, the Court also specifically held that "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. at 486.

Here, the plaintiff's loss of privileges and placement in SMU following his disciplinary action do not constitute atypical and significant hardships. As the Court held in *Sandin*, sanctions such as the loss of privileges and "discipline in segregated confinement do not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. at 486. Accordingly, the plaintiff has failed to state a due process claim regarding his disciplinary proceeding.

### 3) Excessive Force Claims

The plaintiff alleges excessive force claims based upon his alleged gassing and beating by defendant Jones during his transfer to the BRCI. In addition to this claim being barred for failure to exhaust, as discussed above, the defendants argue that the plaintiff has not presented any evidence to support that he was beaten or gassed or that he suffered any injury.

It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive force claim, an inmate

must show: (1) that the correctional officers acted with a sufficiently culpable state of mind, and (2) that the harm inflicted on the inmate was sufficiently serious. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Absent the most extraordinary circumstances, an inmate must provide proof of more than de minimis injury. *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994). " De minimis injury can serve as conclusive evidence that de minimis force was used." *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir. 1997). *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998) (holding that abrasions on the plaintiff's wrists and ankles and tenderness over the plaintiff's ribs were de minimis ).

Here, the plaintiff has not presented any evidence that he was gassed or beaten. Associate Warden Bell states that she was present during the plaintiff's transfer and she did not see any officers beat or gas the plaintiff. (Defs.' Mem. Supp. Summ. J. Ex. 5 - Aff. Bell ¶ 4.) Additionally, the plaintiff has not presented any medical records to show any injury as a result of the alleged beating and gassing. The Court has reviewed the plaintiff's entire medical records and there is no mention of the plaintiff being seen treated for any injuries relating to being gassed or beaten. The plaintiff's bare allegations will not support such a claim and, accordingly, this claim should be dismissed.

### 4) Cruel and Unusual Punishment Claim[6]

---

[6] The Court notes that the plaintiff filed a six-page response opposing the defendants' motion fro summary judgment. (Pl.'s Mem. Opp. Summ. J.) This response is extremely difficult to read and borders on illegible. However, the Court was able to discern the plaintiff's arguments relating to the claims which he alleged in his complaint. The Court, however, declines to address numerous new claims which the plaintiff raises for the first time in this response.

The plaintiff alleges claims for cruel and unusual punishment based upon several incidents. He contends the defendants allowed another inmate to assault him by throwing urine or feces on him, the defendants improperly used the black box causing bruises, and the defendant Jones assaulted him by gassing him and pushing his face against a holding cell window. The defendants contend they are entitled to summary judgement because the plaintiff has failed to allege a sufficient injury relating to these claims. (Defs.' Mem. Supp. Summ. J. Mot. at 8.)

The Eighth Amendment to the United States Constitution protects inmates from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337 (1981). However, inmates are not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. *Id.* at 347. In order to state a claim of constitutional significance, a prisoner must satisfy both an objective and subjective component. *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). To satisfy the objective component, a prisoner is required to demonstrate an "extreme" deprivation. *Id.* Specifically, "the prisoner 'must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Id.* (*quoting Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993)). Additionally, to satisfy the subjective component, the prisoner must allege facts which show that prison officials acted with "deliberate indifference." *Strickland*, 989 F.2d at 1379.

Additionally, the PLRA provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering).

The plaintiff alleges that as a result of these incidents, he is suffering from anxiety attacks, depression, "permanent hair loss due to stress," bruises on his ankles and wrist, and ruptured sinuses. However, a review of the plaintiff's medical records fails to reveal any serious or significant physical injury resulting from these incidents. (See Defs.' Mem. Supp. Summ. J. Ex. #12 - Pl.'s Medical Records; Pl.'s Mem. Opp. Summ. J. Ex. #32 - Pl.'s Med. Records.) *Norman v. Taylor*, 25 F.3d 1259, 1264-65 (4th Cir. 1994)(en banc)(plaintiff's claim failed as matter of law where medical records did not support plaintiff's claim of injury or psychological harm).

Further, even assuming that the plaintiff may be suffering from anxiety, depression, hair loss, bruises, and ruptures sinuses as he alleges, there is nothing in the record before the Court linking these conditions to any alleged mistreatment by the defendants. (*See Id*.) In order to prevail on a constitutional claim for damages under § 1983, a plaintiff must show

that the defendants were the proximate cause of his injuries. *See Martinez v. California*, 444 U.S. 277, 285 1980). Here, the plaintiff has not shown the defendants caused him any injury sufficient to support a cruel and unusual punishment claim. Accordingly, the defendants should be granted summary judgment on this claim.

### 5) Equal Protection Claim

The plaintiff alleges that defendant Warden Claytor places black inmates in SMU more frequently than white inmates. The defendants contend the plaintiff has failed to allege any facts to support such a claim.

It has long been settled that "[p]risoners are protected under the Equal Protection Clause . . . from invidious discrimination." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to establish an equal protection claim, an inmate must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

The plaintiff has not offered any evidence that he was treated differently than other inmates with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. The plaintiff merely makes bald allegations regarding discrimination without any support which are insufficient to survive summary judgment. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations

insufficient to avoid summary judgment). Accordingly, the defendants should be granted summary judgment on the plaintiff's equal protection claim.

### 6) Legal Mail Claims

The plaintiff contends the defendants are opening and reading all his incoming legal mail and violating his constitutional rights. The defendants deny this allegation and also contend the plaintiff has not shown any evidence to support such a claim.

The United States Court of Appeals for the Fourth Circuit, in *Altizer v. Deeds*, 191 F.3d 540, 547-548 (4th Cir. 1999), held that "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and therefore, constitutional . . ." However, in a footnote to that opinion, the court noted that "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id.* at 549, n. 14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)).

Even assuming the plaintiff's rights were implicated by the opening and/or reading of his incoming legal mail, the plaintiff has failed to state a claim because he has not alleged any injury. The courts distinguish between outgoing and incoming mail because one can easily conceive of legitimate penological interests in ensuring that no contraband or harmful substance comes into the prison through the mail. Thus, the mere opening of incoming legal mail in the recipient's absence does not raise a claim of constitutional magnitude. *Griffin v. Virginia*, 2002 WL 32591574 *3 (2002), aff'd, 67 Fed. Appx. 837 (4th

Cir. 2003). To establish that his rights have been violated by opening incoming legal mail, an inmate must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or counsel. *Griffin v. Virginia*, 2002 WL 32591574 *3 (W.D.Va. 2002)(unpublished)(*citing Lewis v. Casey*, 518 U.S. 343 (1996). The plaintiff has not alleged any harm or prejudice in any court action resulting from the opening of his incoming legal mail. In fact, the plaintiff has not even alleged that he had a court case pending at the time. Therefore, the plaintiff has failed to allege or establish any actual harm or prejudice. Accordingly, he has failed to state a claim regarding his legal mail and the defendants should be granted summary judgment on this claim.

### 7) Qualified Immunity

The defendants also raise the defense of qualified immunity, which requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). However, because there is no evidence that any specific right of the plaintiff was violated, it is unnecessary for this Court to address the qualified immunity defense. *See Porterfield v. Lott*, 156 F.3d 563, 567(4th Cir. 1998)(when the court determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist.").

### 8) State Law Claims

Having recommended dismissal of the plaintiff's federal claims, it is further recommended that the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claim of assault and battery. *See* 28 U.S.C. § 1367(c).

### 9) Strike under 28 U.S.C. § 1915

The defendants also contend the court should impose a strike pursuant to 28 U.S.C. 1915(g). Subsection 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Although the undersigned recommends the defendants be granted summary judgment, the undersigned declines to recommend the imposition of a strike. The Fourth Circuit has previously held a strike is inappropriate when a plaintiff's claim is dismissed upon a grant of summary judgment. *See, e.g., Pressley v. Rutledge*, 82 Fed. Appx. 857 (4th Cir. 2003).

### CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion to Dismiss (#40) be DENIED, the Defendants' Motion for Summary Judgment (# 40) be GRANTED, and the Plaintiff's complaint be DISMISSED with prejudice.

FURTHER, if the District Court adopts this recommendation, it is further RECOMMENDED that the Plaintiff's Motion for a Protective Order and/or to Appoint Counsel (#33) be DENIED as moot.

**IT IS SO RECOMMENDED.**

_____
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

July 3, 2007
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).